UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SUSAN TERRY,

                            Plaintiff,

          v.                                    **DECISION AND ORDER**
                                                    03-CV-312S

NATIONAL LIFE INS. CO.,

                            Defendant.

## I.  INTRODUCTION

In this action, Plaintiff Susan Terry alleges that Defendant National Life Insurance

Company ("National") wrongfully denied her application for benefits and improperly

rescinded her private disability insurance policy.   Presently before this Court are the

parties' motions for summary judgment.[1]   For the reasons discussed below, the motions

are denied.

## II.  BACKGROUND

**A.     Facts**

**1.     Terry's Application for Disability Insurance**

On November 9, 1992, Terry met with insurance agent David Stein, who completed

an application for disability insurance from National on Terry's behalf.  (Plaintiff's Rule 56

---

[1]In support of its Motion for Summary Judgment, National filed the Affidavit of Donna M. Lanham, Esq., the Affidavit of Nancy Brenerman, the Affidavit of William Bradley, a memorandum of law, a Rule 56 Statement of Undisputed Facts, the reply Affidavit of Paul Stecker, Esq., a reply memorandum of law, a supplemental memorandum, and a Notice of Supplemental Authority.  In opposition, Terry filed a response to National's Rule 56 Statement, the Affirmation of E. Peter Pfaff, Esq., and a memorandum of law.

In support of her Motion for Summary Judgment, Terry filed the Affirmation of E. Peter Pfaff, Esq., a memorandum of law, a Rule 56 Statement of Undisputed Facts and Appendix, a reply memorandum of law, the Affidavit of Susan Terry, and a supplemental memorandum.  In opposition to Terry's motion, National filed a response to her Rule 56 Statement of Facts and a memorandum of law.

Statement of Undisputed Facts ("Plaintiff's Statement"), ¶¶ 1, 2.)  Stein read the questions from the application aloud, and then recorded Terry's answers.  (Plaintiff's Statement, ¶ 3.)  The only part of the application that Terry completed herself was the signature block.  (Plaintiff's Statement, ¶ 2.)

The important part of the application for purposes of this litigation involves the medical questions.[2]  Terry identified Dr. Leo F. Stornelli as her primary physician in question 16.  (Plaintiff's Statement, ¶ 5.)  She did not disclose any other doctors.  (Plaintiff's Statement, ¶ 5.)  Stein told Terry that the insurance company would obtain her full medical history from Dr. Stornelli, and Stein thought that Dr. Stornelli's records would list all of Terry's doctors.  (Plaintiff's Statement, ¶¶ 6, 7.)

In question 17, Terry indicated that she had "been treated for or diagnosed as having" one or more of the following medical conditions:

> epilepsy, convulsions, dizziness,[3] fainting, paralysis or any other disease or disorder of the brain or nervous system;
>
> pain in the back or neck, sciatica, slipped or herniated disc, or any other disorder of the neck, back or spine;
>
> arthritis, gout or any disease or disorder of the muscles, bone, joints, or skin

In question 18, Terry answered "no" to each part of the following question:

> **Other than already mentioned in this application, have you in the past five years:**
>
> a) consulted a physician, psychiatrist, psychologist, counselor, chiropractor or other practitioner (include

---

[2]A copy of the application is at Docket No. 54-4 in the record.

[3]"Dizziness" is circled on the application.

regular checkups)?

b) had or been advised to have any surgical operation, hospitalization, medical care, electrocardiogram, x-ray, blood test (except for blood tests designed to determine the presence of HIV infection or AIDS) or other diagnostic test?

c) used cocaine, amphetamines, hallucinogens, barbiturates, heroin or any other narcotic drug?

According to Terry, she did not understand that question 18 required her to list every doctor she had seen in the previous five years other than Dr. Stornelli.  (Terry Aff., ¶ 1.) Rather, she believed, based on Stein's representation, that National would obtain additional information, including the names of her other doctors, from Dr. Stornelli and his medical records.  (Terry Aff., ¶ 2.)

Finally, in question 20, which gives applicants the opportunity to expand their answers to questions 16-19, Terry listed several more of her medical conditions in response to question 17, but did not identify any additional doctors or hospitals in continuation of question 18.  She claims that she did not know that the application required her to list every medical service from the five years prior to the application, other than her physical exam with Dr. Stornelli on May 12, 1992.  (Terry Aff., ¶ 1.)

**2.    The Underwriting Investigation**

Upon receipt of Terry's application, National sent it to UnumProvident Corporation ("Unum")[4] for underwriting and claims services.  (Plaintiff's Statement, ¶¶ 8, 9, 10; Defendant's Response to Plaintiff's Statement ("Defendant's Response"), ¶ 8.) During the

---

[4]Unum Life Insurance Company of America was dismissed as a defendant in this action on January 23, 2004.

3

underwriting investigation, Unum reviewed Dr. Stornelli's records, which indicated that Terry treated with undisclosed physicians Sagawa, Lincoln, and DeMacher. (Plaintiff's Statement, ¶¶ 11, 13, 16.) Dr. Stornelli's records also revealed that Terry had spinal cord tethering as a result of a 1988 horse-riding accident. (Brenerman Aff., ¶ 7.)

On March 3, 1993, National issued the disability policy to Terry with a rider excluding disability due to "radiculopathy or injury, disease or disorder of the spine." (Plaintiff's Statement, ¶ 19; Brenerman Aff., ¶ 11.) The policy carried a monthly disability benefit of $2,000. (Plaintiff's Statement, ¶ 20.) Terry also purchased an option to buy an additional $2,000 in coverage without medical underwriting, but she never bought the additional coverage. (Plaintiff's Statement, ¶¶ 20, 21.) Terry authorized National to draw monthly premium payments directly from her checking account, and never revoked this authorization. (Plaintiff's Statement, ¶¶ 22, 23.)

### 3.      Terry's Claim for Benefits and National's Investigation

On January 23, 1998, Terry filed a claim for benefits alleging that she had been unable to work since October 6, 1997, due to a back injury and fibromylagia. (Bradley Aff., Exhibit A.) National paid Terry benefits for the period from January 4, 1998, through August 4, 1998. (Plaintiff's Statement, ¶ 24.) Meanwhile, National investigated Terry's claim.

National's investigation revealed that Terry failed to disclose numerous physicians with whom she had treated in the five years preceding her application. (Defendant's Rule 56 Statement of Undisputed Facts ("Defendant's Statement"), ¶ 4). Among others, Terry saw physicians John A. O'Sullivan, Michael Dunn, John A. Glaser, Wilfried Kunze, and

4

John R. Devanny.  (Defendant's Statement, ¶ 4.)  These physicians diagnosed or treated Terry for various conditions including carpal tunnel syndrome, right radial nerve sensory injury and permanent motor deficit, verbal dyslexia, and partial tear of the anterior cruciate ligament and meniscus in the right knee.  (Defendant's Statement, ¶ 4.)  These doctors were not listed in Terry's application.  (Plaintiff's Statement, ¶¶ 11, 13, 16.)

National also discovered that Terry had arthroscopic knee surgery in May of 1991, and suffered a miscarriage later that year in December.  (Plaintiff's Statement, ¶¶ 14, 17.)  These conditions were also not disclosed in Terry's application.  (Plaintiff's Statement, ¶ 18.)

National's investigation further revealed that Terry sought employment and traveled during the time period for which she claimed to be disabled.  Terry traveled to Oregon in September of 1997; Mexico in November of 1997; Alabama in December of 1997; Oregon, San Francisco, and Los Angeles in March of 1998; and Florida (for scuba diving) in June of 1998.  (Defendant's Statement, ¶¶ 7, 8; Plaintiff's Response to Defendant's Statement ("Plaintiff's Response"), ¶¶ 7, 8; Lanham Aff. Exhibits B and C; Bradley Aff., Exhibit F.)  Terry also applied for an attorney position with the Court of Appeals in Salem, Oregon, in December of 1997.  (Lanham Aff., Exhibit B.)

Based on the findings of its investigation, National decided to deny Terry's claim and rescind the policy.

**4.    National's Denial of Terry's Claim and Purported Rescission of the Policy**

In a letter dated October 23, 1998,[5] National advised Terry that it was rescinding the disability policy and returning her premium payments because its investigation revealed that she had misrepresented her health history in her application.  (Plaintiff's Statement, ¶ 25.) Terry did not cash or deposit the premium-refund check, and did not accept the rescission.  (Plaintiff's Statement, ¶ 27.)

Meanwhile, Terry began working as an attorney for the New York State Attorney General's Office.  (Defendant's Statement, ¶ 13.) She worked there from October of 1998 through March of 2000.  (Defendant's Statement, ¶ 13.) National maintains that Terry was fired for poor performance; Terry says her medical condition prevented her from doing her job effectively.  (Lanham Aff., Exhibits F and G.)  While working for the Attorney General's Office, Terry continued to travel and participate in scuba-diving activities.  In January of 1999, Terry remarried and took a honeymoon to Mexico, where she went scuba diving. (Defendant's Statement, ¶ 9.)  She and her husband later purchased a home in Oregon, where Terry sought employment with Columbia Sportswear while continuing to work in New York.  (Lanham Aff., Exhibit C.)

In May of 1999, Terry and her husband traveled to Grand Cayman Island to scuba dive, and they bought a time-share condominium there.  (Defendant's Statement, ¶ 10; Lanham Aff., Exhibit C.)  Terry and her husband divorced in August of 1999, after which Terry drove a truck with her belongings from Oregon back to New York.  (Defendant's

---

[5]The record also contains a copy of this letter dated September 29, 1998.  (Bradley Aff., Exhibit E.)  According to National, this is a draft of the October letter, and was submitted in error.  A copy of the October letter is at Docket No. 54-5.

Statement, ¶ 11; Lanham Aff., Exhibit C.)  In February of 2000, Terry went to Montreal for

LASIK eye surgery.  (Defendant's Statement, ¶ 12.)

After the New York State Attorney General's Office terminated Terry's employment

in March of 2000, Terry became a certified scuba-diving instructor and opened a scuba-

diving-related business that sold T-shirts and photographs.  (Defendant's Statement, ¶¶

15, 16; Plaintiff's Response, ¶¶ 15, 16.)  Terry also took approximately 22 trips between

April of 2000 and April of 2004, including trips to Trinidad, Cuba; Orlando, Florida; St.

Georges, Bermuda; and the United Kingdom.  (Lanham Aff., Exhibit H.)  Terry went scuba

diving on many of these trips, and held an underwater reception in Port Colborne, Canada,

after she got remarried in the summer of 2004.  (Lanham Aff., Exhibit H.)

**B.   Procedural History**

Terry sued National and Unum on March 7, 2003, in the New York State Supreme

Court, County of Erie, alleging (1) wrongful rescission and breach of contract against

National, and (2) fraudulent claim denial against Unum.  National and Unum removed the

suit to federal court on April 14, 2003.

On January 23, 2004, this Court granted National's motion to dismiss this case in

its entirety.  It found that the claim against National was barred by the contractual 3-year

limitations period in the policy, and concluded that Terry had failed to state a claim for relief

against Unum.  Terry successfully appealed to the United States Court of Appeals for the

Second Circuit, which found that her claim against National was timely under New York's

6-year limitations period for breach of contract.  See Terry v. Unum Life Ins. Co. of Am.,

394 F.3d 108, 109-110 (2d Cir. 2005) (applying N.Y. C.P.L.R. § 213(2)).  Terry did not

appeal this Court's dismissal of her claim against Unum.  <u>See</u> <u>id.</u> at 109.  The Second Circuit remanded for further proceedings on Terry's claim against National.

National filed an Answer and Counterclaim on February 15, 2005.  Terry then retained a new attorney, which delayed the proceedings several months.  Terry filed an Answer to National's Counterclaim (through new counsel) on September 15, 2005.  The parties then tried to mediate this case, but those efforts were unsuccessful.  On May 9, 2006, the parties filed the summary judgment motions currently at bar.  After full briefing, this Court heard oral argument on August 11, 2006, and reserved decision at that time.

### III.  DISCUSSION AND ANALYSIS

#### A.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under governing law." <u>Id.</u>

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." <u>Addickes v. S.H. Kress and Co.</u>, 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970).  "Only when reasonable minds could not differ as to the import of

evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**B.    The Motions for Summary Judgment**

The dispositive motions raise three primary issues: (1) whether National may rescind the policy, (2) whether Terry is disabled within the meaning of the policy, and (3) whether National may assert Terry's alleged failure to sign unaltered medical release forms as an affirmative defense. These issues are discussed below.

### 1.    The Existence of Disputed Issues of Material Fact Precludes Summary Judgment in National's Favor on its Counterclaim for Rescission

In its Answer, National asserts a right to rescission as a counterclaim. It argues that it is entitled to rescind the disability policy because Terry failed to disclose all of her doctors and medical conditions on the application. In opposition, Terry argues that she properly completed the application, which in her view contains ambiguous questions, and therefore National has no right of rescission. Alternatively, she argues that there are disputed issues of material fact that preclude summary judgment, particularly on the issue of whether she completed the application with the intent to defraud.

Under New York law, an insurer is entitled to deny a claim for benefits or avoid an insurance contract, within two years of its issuance, if it discovers that the insured made a material misrepresentation on the insurance application. See N.Y. Ins. Law § 3105; Carden v. First Unum Life Ins. Co., 46 F.Supp.2d 240, 241-42 (S.D.N.Y. 1999). A misrepresentation is material if the insurer would have refused to issue the policy if it knew

the true facts.  See N.Y. Ins. Law § 3105(b).

But if the insurer seeks to avoid an insurance contract *after* two years from the date of issuance — as National does here — the insurer must prove that the insured fraudulently made the material misrepresentations.  See N.Y. Ins. Law. § 3216(d); Carden, 46 F.Supp.2d at 242.   Stated another way, the effect of § 3216(d) of the New York Insurance Law "is that contracts for insurance that might otherwise have been void as a result of misstatements in the application prior to two years from the date of issue of the policy will nevertheless be enforced after two years from the date of issue, unless the misstatements were fraudulent."  Carden, 46 F.Supp.2d at 243.

The parties agree that National carries the burden of demonstrating fraud under § 3216(d) because it seeks to avoid the policy more than two years after it was issued. Under New York law, a party alleging fraud must prove five elements: "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the [party seeking to establish fraud], (5) that causes damage to [that party]."  Ehrlich v. Berkshire Life Ins. Co., No. 00 CIV. 9233, 2002 WL 368444, at *8 (S.D.N.Y. Mar. 7, 2002) (quoting Varda, Inc. v. Ins. Co. of N. Am., 45 F.3d 634, 639 (2d Cir. 1995)).

On the first element, there is little disagreement that the alleged misrepresentations on the application are material.  Although this inquiry ordinarily involves a question of fact, "where the evidence concerning materiality is clear and substantially uncontradicted, the matter is one of law for the court to determine."  Mut. Benefit Life Ins. Co. v. JMR Elec. Corp., 848 F.2d 30, 32 (2d Cir. 1988) (per curiam).

In her affidavit, Nancy Brenerman, National's chief underwriter, explains the underwriting process and explicitly states that "had [Terry] accurately completed the application, National Life would not have issued the Policy as applied for." (Brenerman Aff., ¶ 19.) Brenerman further asserts that "[i]f [Terry] had disclosed the truth about her right radial nerve sensory injury, her carpal tunnel syndrome, and cognitive problems, a National Life underwriter would have required, at a minimum, additional exclusions, or, possibly, would have denied the application." (Brenerman Aff., ¶ 19.)

Terry has not submitted any evidence to contradict Brenerman's assertions of materiality, and her attorney conceded at oral argument that he is not in possession of any contradictory evidence. Accordingly, it is undisputed that the alleged discrepancies and omissions are material.

On the second and third elements of fraud, this Court finds that summary judgment is precluded because there are disputed issues of material fact. In order to establish Terry's knowledge of falsity and intent to defraud, National must prove that Terry intentionally omitted or knowingly misrepresented information on the application, or that she made statements recklessly, and that she did so with the intent to defraud. See Ehrlich, 2002 WL 368444, at *9 (citing cases).

National urges this Court to infer from Terry's status as an attorney and her omission of so many physicians and medical conditions that she knowingly provided false information (or intentionally omitted truthful information) in an effort to fraudulently induce National to issue a disability policy that it otherwise would not have issued. It further points to the language in the application above Terry's signature where she acknowledges that her answers must be true because National will rely on them in determining whether to

11

issue a policy.  National further argues that at the least, Terry recklessly disregarded the truth given the seriousness of the medical conditions she failed to disclose and the number of physicians she failed to identify.

In contrast, Terry argues that the questions in the application were ambiguous, and that she answered them in good faith.  Specifically, she argues that because she answered "yes" to having certain conditions in question 17, the application does not require her to divulge additional doctors in question 18 because the fact that she had certain medical conditions (and presumably sought treatment for them from physicians), was "already mentioned in this application," and thus not required to be disclosed.

Terry has also submitted an affidavit attesting to her belief that the application did not call for her to list any doctors other than Dr. Stornelli.  (Terry Aff., ¶¶ 1, 2.)  She further relies on the testimony from insurance agent Stein, who admits that he told Terry that listing only Dr. Stornelli was sufficient because the insurance carrier would get the rest of her medical history from Dr. Stornelli's records.[6]  (See Plaintiff's Rule 56 Appendix.)  And she points to the fact that she did not purchase the additional coverage that would have doubled her monthly benefit without the need for further medical underwriting, which she says demonstrates a lack of intent to defraud.

---

[6]National argues that Stein's representations to Terry are irrelevant because an applicant cannot rely on an agent's statements, particularly where, as here, the application does not authorize the agent to waive questions or omit answers.  See Wageman v. Metro. Life Ins. Co., 24 A.D.2d 67, 70 (1st Dep't 1965).  But here, Terry's reliance on Stein is relevant to the issue of whether she purposely omitted or misrepresented information with the intent to defraud.  A reasonable fact-finder could determine that although not legally entitled to do so, Terry relied on Stein in good faith, such that she did not intend to defraud National.  For this reason, Terry's interaction with Stein raises a question of material fact.

National characterizes Terry's interpretation of the application as unreasonable and wholly unsupported by the plain language of the document.  But the issue is whether Terry knowingly omitted or falsified information with the intent to defraud.  That is a fact-driven question that must be resolved at trial.  At that time, the fact-finder will have to evaluate the believability and reasonableness of Terry's interpretation of the application, and weigh all of the other evidence to determine whether Terry knowingly falsified or intentionally omitted material information on her application in an attempt to induce National to issue a policy it would not otherwise have issued.  Summary judgment is therefore not appropriate.

There are also disputed issues of material fact on the fourth element, which requires proof that the insurer reasonably relied on the application.  Although an insurer has the right to rely on a written application if it is signed by the insured and attached to the policy, its reliance must be reasonable.  See Ehrlich, 2002 WL 368444, at *11.  "The fact that the insurer did not seek out truthful information, even if that information was publicly available, is not enough to charge the defendant with knowledge."  Id. (citing cases).  But the insurer cannot "close its eyes to the obvious."  Id. (quoting Variety Homes, Inc. v. Postal Life Ins. Co., 287 F.2d 320, 323 (2d Cir. 1961)).

On this point, National argues that it reasonably relied on Terry's application as it is entitled to do.  But there is evidence in the record that National learned of some of Terry's undisclosed doctors and medical conditions through its underwriting investigation but nonetheless issued the policy knowing that Terry was not forthright in all of her responses.  In light of the fact that there are other issues in this case that will require trial, this Court finds it most appropriate to also let the fact-finder determine whether National's reliance on Terry's application was reasonable in light of its pre-approval knowledge that

13

she omitted certain medical information from her application.

On the final element — injury — there appears to be no dispute that National paid benefits to Terry that it would not otherwise have been obligated to pay if there was a different policy or no policy at all in place.  Accordingly, it is undisputed that National suffered an injury as a result of the alleged fraud.

In sum, this Court finds that material issues of fact exist such that summary judgment on National's rescission claim is not warranted in either party's favor.  This claim will proceed to trial.

### 2. The Existence of Disputed Issues of Material Fact Precludes Summary Judgment in National's Favor on the Issue of Disability

National also moves for summary judgment on Terry's claim that she is disabled within the meaning of the policy.  Terry opposes this request, and argues that she is disabled and entitled to benefits.

Terry bears the burden of proving that she is disabled under the policy.  See Shapiro v. Berkshire Life Ins. Co., 212 F.3d 121, 124 (2d Cir. 2000).  The policy defines "total disability" and "totally disabled" as

> 1.  injury or sickness restricts your ability to perform the material and substantial duties of your regular occupation to an extent that prevents you from engaging in your regular occupation; and
>
> 2.  you are receiving medical care from someone other than yourself which is appropriate for the injury or sickness.  We will waive this requirement when continued care would be of no benefit to you.

The policy also provides for benefits in the case of "residual disability."  This term has different meanings depending on whether the elimination period has expired.  During the elimination period, "residual disability" and "residually disabled" mean:

1.      injury or sickness does not prevent you from engaging in your regular occupation, BUT does restrict your ability to perform the material and substantial duties of your regular occupation:

   a.      for as long a time as you customarily performed them before the injury or sickness; or

   b.      as effectively as you customarily performed them before the injury or sickness; and

2.      you are receiving medical care from someone other than yourself which is appropriate for the injury or sickness.  We will waive this requirement when continued care would be of no benefit to you.

After the elimination period has expired, "residual disability" and "residually disabled" mean that as a result of the same injury or sickness that satisfied the elimination period:

1.      you experience at least a 20% loss of net income in your regular occupation; and

2.      you are receiving medical care from someone other than yourself which is appropriate for the injury or sickness.  We will waive this requirement when continued care would be of no benefit to you.

National argues that it is entitled to summary judgment because Terry cannot prove that injury or sickness prevented her from functioning as an attorney.  Rather, National maintains that the evidence of Terry's active lifestyle, including extensive travel and scuba diving, demonstrates that she was not disabled under the policy at any time.  Moreover, it argues that Terry's dismissal from the New York Attorney General's Office for poor

performance negates any finding that she had to stop working because she was disabled.

Terry argues that she is not insured against disability as a traveler or scuba diver; she is insured against disability as an attorney.  Moreover, she argues that her job as a trial attorney was stressful and required mental focus and concentration.  She testified at her deposition that she lacks stamina, cannot work on a time-line, cannot reason or focus, and must get others to do research and legal writing.  (Terry Dep., pp. 126-127.[7])  She also maintains that her inability to function effectively as an attorney due to her medical condition is what caused her to be discharged from the New York Attorney General's Office.  (Terry Dep., p. 125.)  Finally, she relies on Dr. Dobson's opinion that she is totally disabled.  (See Docket No. 65-5.)

In this Court's view, summary judgment on the issue of whether Terry is disabled under the fact-driven definition of disability in the policy is precluded by the existence of disputed issues of material fact.  This claim will therefore also proceed to trial.

**3.     The Existence of Disputed Issues of Material Fact Precludes Summary Judgment in Terry's Favor on National's Affirmative Defense that Terry Failed to Sign Unaltered Medical Record Authorization Forms**

Terry argues that she is entitled to summary judgment precluding National's third affirmative defense, which asserts that Terry failed to sign required medical record release forms.  Terry argues that she signed the required forms, and in any event, National waived this defense by not asserting it in its October 23, 1998 letter purportedly rescinding the policy.  These arguments are without merit.

---

[7]Excerpts from Terry's deposition are at Docket No. 65-4.

There appears to be no dispute that the policy requires Terry to complete any forms necessary for National to evaluate a claim for benefits.  But there is disagreement concerning which forms are necessary.  Terry maintains that she signed authorization forms on several occasions (including when she was paid benefits), but there is also evidence in the record that Terry submitted an altered standard medical record release form on February 9, 1998, excluding psychiatric letters and limiting the authorization to certain dates.  (Lanham Aff., Exhibits D and E.)  National maintains that Terry revoked her previous authorizations by notifying National that her altered authorization superseded all other authorizations. (Lanham Aff., Exhibits D and E.)  Thus, there is an issue with respect to whether Terry fully complied with the requirement that she complete all forms necessary to evaluate her claim.

Moreover, Terry's waiver argument is not persuasive because National did in fact include a discussion of Terry's failure to complete a proper authorization form in its October 23, 1998 letter.

Consequently, this Court finds no cause to preclude National's third affirmative defense at this stage.

## IV.  CONCLUSION

For the reasons discussed above, the motions for summary judgment are denied, and this case will proceed to trial.

17

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 47) is DENIED.

FURTHER, that Plaintiff's Motion for Summary Judgment (Docket No. 54) is DENIED.

FURTHER, that a status conference to discuss a trial date will be scheduled by separate order.

SO ORDERED.

Dated:        September 28, 2007
              Buffalo, New York


                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge